UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD MYERSKI,                    :
                                    :
          Plaintiff,                :CIVIL ACTION NO. 3:16-CV-488
                                    :
          v.                        :(JUDGE CONABOY)
                                    :
FIRST ACCEPTANCE INSURANCE          :
COMPANY, INC., and FIRST            :
ACCEPTANCE INSURANCE                :
SERVICES, INC.,                     :
                                    :
          Defendants.               :
                                    :
_____

**MEMORANDUM**

Defendants' Motion to Dismiss (Doc. 7) is pending before the Court.  With this motion, Defendants seek dismissal of four of the seven counts contained in Plaintiff's Complaint: Count Three for Good Faith and Fair Dealing; Count Four for Bad Faith pursuant to 42 Pa. C.S. § 8371; Count Five for Negligence; and Count Six for Vicarious Liability.  (Doc. 7 at 1.)  For the reasons discussed below, the Court concludes that Defendants' Motion is properly granted.

**I. Background**

This action was removed from the Court of Common Pleas of Lackawanna County, Pennsylvania, on March 22, 2016.  (Doc. 1.)  The following factual recitation is derived from the Statement of Facts in Defendants' supporting brief.[1]  (Doc. 8 at 2-6.)  This

_____

[1] The Court adopts this Statement of Facts in that Defendants provide citations to the record where Plaintiff's Statement of Facts (Doc. 12 at 6-11) does not.

recitation is supplemented by additional facts of record the Court
deems pertinent.

Per the Complaint, Plaintiff was the
permissive driver of his mother Sara Morris'
car on April 19, 2015, when he was involved
in a crash with an uninsured vehicle. (*See*
Ex. A. Compl. at ¶¶6, 9-12).  Plaintiff
suffered bodily injuries. *(See id.* at ¶14).
He was obligated to pay for medical expenses
and suffered wage loss and loss of earning
capacity.  (*See id.* at ¶¶15, 17).  Plaintiff
does not allege or attach proof of the amount
of medical expenses incurred or wages lost.
(*See, generally, id.*).

Defendant insured the subject vehicle
and provided $15,000 of UM benefits and
$5,000 of first party medical benefits (also
referred to herein as "Personal Injury
Protection" or "PIP").  (*See id.* at ¶¶7, 23-
24).  Plaintiff did not reside with Morris.
(*See id.* at ¶18).  On the day of the crash,
Morris informed Defendants it occurred and
her son was injured.  (*See id.* at ¶25).  She
told Defendants Plaintiff was not named on
the policy and did not reside with her.  (*See
id.*).

On August 25, 2015, Defendants advised
Morris they were denying coverage for the
damage to her vehicle based on the following
policy language:

PART D:   COVERAGE FOR DAMAGE TO
          YOUR AUTO

EXCLUSIONS

1.   Any loss or damage arising
     from an accident which occurs
     while the auto is being
     operated, manipulated,
     maintained, services or used
     in any other manner by an
     unlisted driver who resides in

2

> the same household as the
> named insured, or is a regular
> and frequent operator of any
> vehicle insured under this
> policy.  This exclusion shall
> apply whether or not the named
> insured is occupying the
> vehicle at the same time said
> driver is using it in any
> manner whatsoever.

(*Id.* at ¶26).  On unpled dates, Morris
received the police report showing a
different address for Plaintiff than Morris'
address and informed Defendants the other
vehicle was uninsured per the police report.
(*See id.* At ¶¶28-29).  However, the police
report notes insurance coverage through CSAA
General.  (*See* Ex. B, Police Rpt., 2).  On
this unpled date, Defendants contended
Plaintiff resided with Morris and denied all
claims under the policy.  (*See id.* At ¶29).

Plaintiff and Morris then retained
counsel who wrote to Defendants on November
25, 2015.  (*See id.* ¶¶30-31).  Counsel
advised Plaintiff did not reside with Morris
and requested copies of the policy,
declarations page, first party benefits
application, and name and phone number of the
property damage adjuster.  (*See id.* at ¶31).
The referenced letter does not mention a
claim for UM benefits.  (*See id.* at Ex. C
(11/25/15 Fax to Defs).).  Defendants
responded by faxing the attorney the August
25, 2015 letter denying property damage
benefits based on the Part D exclusion.  (*See
id.* at ¶32).  The letter does not reference
denials of claims for UM or first party
medical benefits.  (*See id.* at Ex. D
(11/25/15 Fax to Pl. Att'y)).

On November 27, 2015, Plaintiff's
attorney advised Defendants they did not
properly respond to her November 25, 2015
letter by re-sending the August 25, 2015
denial.  (*See id.* at ¶33).  Enclosed with the
letter, she sent a copy of the police report

3

and Plaintiff's driver's license showing different address from Morris' address. (*See id.*) The attorney requested documentation in support of the denial and the policy and declarations page. (*See id.*) The November 27, 2015 letter does not mention a claim for UM benefits. (*See id.* at Ex. E (11/27/15 Fax to Defs.)).

On December 2, 2015, Defendants re-sent the August 25, 2015 property damage denial letter. (*See id.* at ¶34). That same day, Defendants sent a second letter "advising they have 'opened a claim for a review of PIP benefits.'" (*Id.* at ¶35). The letter states:

> We are in receipt of your letter dated November 27, requesting that we revisit our denial of Part D: Coverage For Damage To Your Auto. You have also requested that we provide you with all documentation relied upon to make our coverage decision along with certified copies of the policy, declarations page, waivers, the name of the property damage adjuster and an Application for Benefits.
>
> Please be advised that we have opened a claim for a review of PIP benefits. We are gathering all of the items you requested so that we may provide them to you. In the mean time we would like to respond with the items that are presently at hand.  We have requested a transcription of the recorded statement that was obtained from Richard Myerski on August 25.  Once provided with this statement you will note that Mr. Myerski provided the address of 1072 Bunnell Farm Road as his residency.  This is the same address as the one listed on our policy for Mrs. Morris.  Mr. Myerski further states, in part, that Mrs. Morris is the co-signer

4

> of the vehicle in question and that
> he drives the vehicle "all of the
> time." The propert [sic] damage
> adjuster is Beverly Bowers. Once a
> PIP adjuster is assigned, you will
> be provided with the necessary
> documents related to the claim for
> PIP coverage.

(*Id.* at Ex. G (12/2/15 Ltr. to Pl. Att'y).
The letter does not mention UM benefits (*See
id.*). The same day, Defendants called
Plaintiff's attorney and told her Defendants
are denying all claims based on the household
and regular and frequent use exclusions.
(*See id.* at ¶36). On December 9, 2015,
Defendants advised Plaintiff's attorney they
"are 'investigating' the PIP and uninsured
claim," but did not confirm coverage would be
extended. (*Id.* at ¶37).

Defendants provided a certified copy of
the policy on December 10, 2015, with
correspondence stating, they are "continuing
[their] investigation into liability coverage
and uninsured motorist." (*Id.* at ¶38). The
letter Plaintiff relies upon states:

> Attached are the documents you
> requested, a copy of our
> declaration page and transcription
> of our statement from your client,
> Richard Myerski.
>
> Please note that we are continuing
> our investigation into liability
> coverage and uninsured motorist.
> If you have a copy of a coverage
> denial from the other driver's
> carrier, please provide that for
> our records. Additionally, we are
> also taking a further look into the
> negligence for this loss. We will
> keep you apprised of any further
> developments.

(*See id.* at Ex. A (12/10/15 Ltr. To Pl.
Att'y)). In his recorded statement taken

> August 25, 2015, which was enclosed with this
> letter but omitted from Plaintiff's Exhibit
> A, Plaintiff stated he lives with his mother
> and he drives the subject vehicle "all the
> time...six days a week." (Ex. C, Pl.
> Statement, 1-2).
>
> Plaintiff claims Defendants have "failed
> to make any PIP benefits or uninsured
> coverage available to Plaintiff and [have]
> taken the position that there is no coverage
> for these claim." (*Id.* at ¶35).

(Doc. 8 at 2-6.)

Defendants assert that "[t]he remainder of the Complaint contains boilerplate allegations, including paragraph 49, which includes sixty-two such allegations." (Doc. 8 at 5.) Defendants also note that "Plaintiff has not attached any correspondence or documentation in which Defendants refused to extend either UM or first party medical benefits coverage"; "Plaintiff has not attached or otherwise alleged that a demand package or other proof of Plaintiff's injuries and damages incurred was submitted to Defendants"; "Plaintiff has not attached documentation of or otherwise alleged the amount of the medical bills incurred, which Defendants refuse to pay with first party medical benefits coverage"; "Plaintiff has not attached documentation of or otherwise alleged the amount of wages lost and anticipated future lost wages"; and "Plaintiff has not alleged it was improper to deny coverage based on Plaintiff's regular and frequent use of the vehicle." (Doc. 8 at 6.)

Plaintiff's Statement of Facts includes the assertion that

6

Tim Brown, the driver of the other vehicle, was 100% at fault in this accident. (Doc. 12 at 6.) Regarding the "unpled dates" referenced in Defendants' Statement of Facts, Plaintiff avers that Ms. Morris received a copy of the police report after she received the August 25, 2015, correspondence from Defendants and she then followed up with a call to Ms. Bowers informing her that the police report showed a different address for Plaintiff than Morris' address and informed Defendants the other vehicle was uninsured. (Doc. 12 at 8.) In the Complaint, Plaintiff avers that when Ms. Morris informed Ms. Bowers that the other vehicle was uninsured, Ms. Bower's stated "It was her problem." (Compl. ¶ 29 (Doc. 1 at 12).) Plaintiff also avers that Ms. Bowers denied the offer from Ms. Morris for further information and/or documentation. (*Id.*)

## II. Discussion

### A. Motion to Dismiss Standard

In *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009), the Third Circuit Court of Appeals set out the standard applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, 566 U.S. 662, 129 S. Ct. 1937 (2009).

> "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.'"

> *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550
> U.S. at 570).  The Court emphasized that
> "only a complaint that states a plausible
> claim for relief survives a motion to
> dismiss." *Id.* at 1950.  Moreover, it
> continued, "[d]etermining whether a complaint
> states a plausible claim for relief will . .
> . be a context-specific task that requires
> the reviewing court to draw on its judicial
> experience and common sense." *Id.* (citation
> omitted).

*McTernan,* 577 F.3d at 530.  The Circuit Court discussed the

effects of *Twombly* and *Iqbal* in detail and provided a road map for

district courts presented with a motion to dismiss for failure to

state a claim in a case filed just a week before *McTernan*, *Fowler*

*v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009).

> [D]istrict courts should conduct a two-part
> analysis.  First, the factual and legal
> elements of a claim should be separated.  The
> District Court must accept all of the
> complaint's well-pleaded facts as true, but
> may disregard any legal conclusions. [*Iqbal*,
> 129 S. Ct. at 1949.]  Second, a District
> Court must then determine whether the facts
> alleged in the complaint are sufficient to
> show that the plaintiff has a "plausible
> claim for relief." *Id.* at 1950.  In other
> words, a complaint must do more than allege a
> plaintiff's entitlement to relief.  A
> complaint has to "show" such an entitlement
> with its facts. *See Philips* [*v. Co. of
> Alleghany*], 515 F.3d [224,] 234-35 [(3d
> Cir.2008 )].  As the Supreme Court instructed
> in *Iqbal*, "[w]here the well-pleaded facts do
> not permit the court to infer more than the
> mere possibility of misconduct, the complaint
> has alleged--but it has not 'show[n]'--'that
> the pleader is entitled to relief.'" *Iqbal*,
> 129 S. Ct. at 1949.  This "plausibility"
> determination will be "a context-specific
> task that requires the reviewing court to
> draw on its judicial experience and common

8

sense."  *Id.*

*Fowler*, 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal
conclusions are not entitled to the same deference as well-pled
facts.  In other words, "the court is 'not bound to accept as true
a legal conclusion couched as a factual allegation.'"  *Guirguis v.
Movers Specialty Services, Inc.*, 346 F. App'x 774, 776 (3d Cir.
2009) (not precedential) (*quoting Twombly*, 550 U.S. at 555).

Courts generally consider only the allegations contained in
the complaint, exhibits attached to the complaint and matters of
public record in deciding a motion to dismiss.  *Pension Benefit
Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d
Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 503
F.3d 263, 268 (3d Cir. 2007).  Courts may also consider
"undisputedly authentic document[s] that a defendant attaches as an
exhibit to a motion to dismiss if the plaintiff's claims are based
on the [attached] document[s]."  *Pension Benefit*, 998 F.2d at 1196.
In addition, "documents whose contents are alleged in the complaint
and whose authenticity no party questions, but which are not
physically attached to the pleading, may be considered."  *Pryor v.
Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002)
(citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*,
281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may
not consider matters extraneous to the pleadings, a document

integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted).  The court may not, however, rely on other parts of the record in making its decision on a motion to dismiss.  *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994)

In a motion to dismiss for failure to state a claim, the defendant bears the burden of showing that no claim has been presented.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, the district court must extend the plaintiff an opportunity to amend before dismissing a complaint unless amendment would be inequitable or futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

**B.   *Defendant's Motion***

As noted above, Defendants seek dismissal of Plaintiff's claims for breach of the covenant of good faith and fair dealing, statutory bad faith, negligence, and vicarious liability.  (Doc. 8 at 8-15.)  Plaintiff maintains these claims are all properly pled and should go forward.  (Doc. 12 at 12-31.)

**1.   <u>Bad Faith</u>**

Defendants maintain Plaintiff's claim for bad faith is legally insufficient and must be dismissed.  (Doc. 8 at 8.)  Plaintiff

10

asserts that he has provided sufficient factual averments to support a claim against Defendants for bad faith: he has sufficiently alleged that "Defendants relied on an exclusion, inapplicable to Plaintiff's claims, in denying coverage at the outset and then refused to cooperate and communicate with Plaintiff and his counsel regarding the Plaintiffs [sic] valid claims for benefits under the insurance policy." (Doc. 12 at 19-20.) Based on a careful review of the Complaint and other documents properly considered on a motion to dismiss, the Court concludes Plaintiff's claim for statutory bad faith is properly dismissed.

An action for bad faith in Pennsylvania is governed by 42 Pa. C.S. § 8371 which provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S. § 8371.

The statute does not define what constitutes bad faith but Pennsylvania courts, the Third Circuit Court of Appeals, and decisions from district courts within the Third Circuit provide

11

ample guidance.  "The term 'bad faith' under section 8371 concerns 'the duty of good faith and fair dealing in the parties' contract and the manner in which an insurer discharged . . . its obligation to pay of a loss in the first party claim context.'"  *Berg v. Nationwide Mut. Ins. Co., Inc.*, 44 A.3d 1164, 1175-76 (Pa. Super. 2012) (quoting *Toy v. Metrolpolitan Life Ins. Co.*, 928 A.2d 186, 199 (Pa. 2007)) (alteration in original).  In *Treadways LLC v. Travelers Indem. Co.*, 467 F. App'x 143 (3d Cir. 2012) (not precedential), the Court of Appeals for the Third Circuit set out the relevant legal framework:

> "Bad faith" under Pennsylvania's bad faith statute--42 Pa. Const. Stat. § 8371, which provides a remedy in an action under an insurance policy--is defined as "any frivolous or unfounded refusal to pay proceeds of a policy." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (quoting *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)).  A valid cause of action for bad faith requires "clear and convincing evidence . . . that the insurer: (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Id.*  Under the "clear and convincing" standard, "the plaintiff [must] show 'that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or nor the defendants acted in bad faith.'" *Id.*  (quoting *Bostick v. ITT Hartford Grp., Inc.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999)).  Though we have found that bad faith may be found in circumstances other than an insurer's refusal to pay, "[a] reasonable basis is all that is required to defeat a claim of bad faith." *Id.; see also*

12

>           *Frog, Switch & Mfg. Co. v. Travelers Ins.*
>           *Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999).

467 F. App'x at 146-47 (alteration in *Treadways*).

The Pennsylvania Superior Court has observed that "[b]ad faith claims are fact specific and depend on the conduct of the insurer *vis a` vis* the insured." *Condio v. Erie Ins. Exchange*, 899 A.2d 1136, 1143 (Pa. Super. 2006) (citing *Williams v. Nationwide Ins. Co.*, 750 A.2d 881, 887 (Pa. Super. 2000)).  *In O'Donnell ex. rel. Mitro v. Allstate Ins. Co.*, 734 A.2d 901 (Pa. Super. 1999), the Pennsylvania Superior Court discussed the expanding nature of the applicability of the bad faith statute and held that the conduct of an insurer during the pendency of litigation may be considered as evidence of bad faith.  *O'Donnell*, 734 A.2d at 906-08.  Bad faith is not restricted to an insurer's denial of benefits and includes a wide variety of objectionable conduct including lack of good faith investigation and failure to communicate with a client.  *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 500-01 (Pa. Super. 2004) (listing cases).  A claim for bad faith may be based on an alleged violation of the Unfair Insurance Practices Act ("UIPA"), 40 P.S. § 1171.1 *et seq*.  *Romano v. Nationwide*, 646 A.2d 1228, 1230 (Pa. Super. 1994).  Negligence or bad judgment do not constitute bad faith.  *Brown*, 860 A.2d at 501 (citing *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1036 (Pa. Super. 1999)).  "To support a finding of bad faith, the insurer's conduct must be such as to 'import a

13

dishonest purpose.'  In other words, the plaintiff must show that the insurer breached its duty of good faith through some motive of self-interest or ill will."  *Id.* (quoting *Adamski*, 738 A.2d at 1036).

Defendants maintain Plaintiff's statutory bad faith claim is properly dismissed on several grounds,

> most importantly [because] Plaintiff has not alleged, nor can he, that he provided Defendants with any proof of the value of his UM claim or any unpaid bills subject to first party medical payment.  He does not allege he submitted a single medical record or bill to Defendants or any proof of lost wages and earning capacity.

(Doc. 8 at 11 (citing *Yohn v. Nationwide Ins. Co.*, Civ. A. No. 1:13-CV-024, 2013 U.S. Dist. LEXIS 80703, at *19 (M.D. Pa. May 10, 2013)).)  Defendants add that the only mention of a UM claim in the correspondence is Defendants' letter of December 10, 2015, which indicated an ongoing investigation: the letter stated "'we are continuing our investigation into liability coverage and uninsured motorist.  If you have a copy of a coverage denial from  the other driver's carrier, please provide that for our records. Additionally, we are also taking a further look into the negligence for this loss.'"  (*Id.* at 12 (quoting Compl. Ex. A (Doc. 1 at 29)).)  Defendants assert that this letter shows they did not have a denial of coverage from the tortfeasor's insurer so they did not know whether UM or underinsured motorist ("UIM") coverage would apply.  (*Id.*)  They further note that the Complaint does not

14

include any allegations or documentation showing that Plaintiff or his attorney provided the requested denial letter. (*Id.*) On these facts, Defendants maintain they cannot be held to answer bad faith allegations when Plaintiff is not contributing to the reasonable investigation. (*Id.*)

Defendants next point to the timeline showing that Plaintiff's attorney's first letter was dated November 25, 2015, she sent a second letter on November 27, 2015, and they responded to the requests with their correspondence of December 2, 2015, which was followed a week later with additional information. (Doc. 8 at 12.) Defendants maintain that "[a]t that point, the ball was in Plaintiff and his attorney's court and the Complaint, filed just two moths later, does not provide further factual support to advance Plaintiff's claim, any misdeeds by Defendants or proofs of loss from Plaintiff." (*Id.*)

Plaintiff first focuses on the insured's contact with Defendants' representative, Beverly Bowers, asserting that her denial of Plaintiff's claims was unreasonable and unjustified. (Doc. 12 at 14-15.) Plaintiff also points to Defendants' responses to Plaintiff's counsel's correspondence as evidence of bad faith. (Doc. 12 at 16-17.)

The facts alleged show that Defendants reasonably denied the claim for damage to the insured's vehicle based on the policy exclusion: Plaintiff himself stated that he lived with his mother

*and* drove the vehicle "all the time." (*See* Doc. 8 at 4.) Even if there is evidence which could support a claim that Plaintiff mistakenly made the August 25, 2015, statement about his residence, Plaintiff does not point to evidence undermining his statement that he used the car "all the time," usage which would fall under the "regular or frequent operator" exclusion. In fact, Plaintiff does not assert that this exclusion does not apply. Importantly, Defendants' August 25, 2015, correspondence to Ms. Morris indicates there is no coverage for damage to her auto based on the exclusion set out above--it does not limit the application of the exclusion to Plaintiff's place of residence. (Doc. 1 at 77.) Given the admissions in Plaintiff's statement and the basis for denial identified in Defendants' August 25, 2015, correspondence, Plaintiff's assertion that bad faith is evidenced by Defendants' failure to properly investigate Plaintiff's residence is not an accurate assessment of the bases upon which the exclusion may apply in this case. It follows that Defendants' alleged refusal to further investigate Plaintiff's residence and failure to pay for damage to Ms. Morris' auto cannot be considered "frivolous or unfounded" refusals. *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d at 367.

The facts alleged also show that Defendants cannot be considered to have acted in bad faith following Plaintiff's counsel's November 25, 2015, letter informing Ms. Bowers that

16

Plaintiff was represented by counsel and requesting certain information and an Application for Benefits.  (Doc. 1 at 79.) Although Plaintiff alleges that Defendants' initial response was unsatisfactory, there is no dispute that Defendants' Claim Supervisor sent correspondence to Plaintiff's counsel on December 2, 2015, four business days after Plaintiff's counsel's initial correspondence, advising that the requested information would be provided and Defendants had opened a claim for review of PIP benefits.[2]  (Doc. 1 at 90; Doc. 14 at 7 & n.2.)  There is no dispute that Defendants followed up with the requested documentation on December 10, 2015.  (Doc. 1 at 29.)  The December 10, 2015, correspondence also advised Plaintiff's counsel that investigations were continuing into liability coverage and uninsured motorist coverage, and requested a copy of a coverage denial from the other driver's carrier.  (*Id.*)  As noted by Defendants, the Complaint in this action was filed just two months later and "and does not provide any further factual support to advance Plaintiff's claim, particularly any misdeeds by Defendant or proofs of loss from Plaintiff."  (Doc. 8 at 12.)  Plaintiff does not dispute Defendants' assertion that the UM and PIP claims which were opened in December 2015 were the subject of ongoing

---

[2]  No UM claim had been mentioned in Plaintiff's counsel's letters (Doc. 1 at 79, 84) and Defendants' representative did not address that issue (Doc. 1 at 90).

consideration by Defendants when the Complaint was filed.  (*See*, *e.g.*, Doc. 14 at 8.)  Given this timeline, the facts alleged in the Complaint, and reasonable inferences drawn from them, the "clear and convincing" evidence needed to show Defendants acted unreasonably going forward from the time they were contacted by Plaintiff's counsel is not presented.  393 F.3d at 367.

The question remains whether bad faith may be found in Defendants' initial handling of the case.  Plaintiff asserts that the Complaint sets out a factual foundation "which demonstrates that the Defendants arbitrarily denied coverage without any justification and delayed in allegedly opening a pip claim until 4 months after the accident."  (Doc. 12 at 14.)  Plaintiff also maintains that Defendants, by and through agents, "made verbal affirmations that they were denying all of the Plaintiff's claims based on an exclusion which does not apply to such claims and cannot be relied upon by the Defendants to deny coverage."[3]  (*Id.*) These assertions are made without citation to the record.  As discussed above, the facts of this case do not support the conclusion that any refusal to pay the property damage claim constituted bad faith.  To the extent Plaintiff claims a wrongful refusal to pay claims for first party medical benefits and uninsured motorist benefits immediately following the accident and shortly thereafter, I review relevant allegations in the Complaint

---

[3] These assertions are made without citation to the record.

and other evidence of record acceptably considered on a motion to dismiss.

The Complaint alleges that on the day of the accident Ms. Morris put Defendants on notice that the accident had occurred and Plaintiff was injured.  (Compl. ¶ 25 (Doc. 1 at 11).)  The Complaint also alleges that after receiving Defendants' August 25, 2015, correspondence stating that the investigation to date revealed there was no coverage for damage to her auto based on a policy exclusion

> Ms. Morris followed up with Ms. Bowers to advise that the other vehicle was uninsured according to the police report. Ms. Bowers stated that "It was her problem." Ms. Morris offered to provide a copy of the police report as well as Plaintiff's license to document his address. Ms. Bowers still contended that Plaintiff resided with Ms. Morris and that Defendant was denying all claims under the policy. Ms. Bowers declined the offer from Ms. Morris for further information and/or documentation.

(Compl. ¶ 29 (Doc. 1 at 12).)  The Complaint states "Due to Defendant's denial of coverage, despite information from its insured that the denial was not supported by facts, Plaintiff was forced to retain counsel."  (Compl. ¶ 30 (Doc. 1 at 12).)  The Police Crash Reporting Form indicates that two cars and four people were involved in the accident and no one was injured or transported to a medical facility.[4]  (Doc. 8-2 at 2, 5.)  The Report also

---

[4]  Though not relevant to Plaintiff's allegations regarding PIP and uninsured motorist claims, the Report records Plaintiff's

indicates that the vehicle driven by Timothy Brown was insured by CSAA General.  (*Id.* at 3.)

Regarding Ms. Morris' phone conversation with Ms. Bowers, Plaintiff's opposition brief states "this denial of Plaintiff's first party medical benefits and uninsured motorist benefits claims was unreasonable and unjustified as the exclusion relied on by the Defendants is not applicable to the Plaintiff's claims."  (Doc. 12 at 15.)

Although it is a true statement that the exclusion at issue does not apply to first party medical benefits and uninsured motorist claims, it does not necessarily follow that Ms. Bowers' statement that Defendants were "denying all claims under the policy" means they were denying first party medical benefits and uninsured motorist benefits claims: such claims were not specifically addressed and the record does not clearly establish that these claims had been made at the time of the phone call. Regarding the PIP claim, Plaintiff makes no assertion that Ms. Morris provided information to Ms. Bowers regarding the nature or seriousness of Plaintiff's injuries when she informed Defendants of the accident on the day it occurred, or that she raised the issue of Plaintiff's injuries in her follow up conversation in which the

---

address to be 1504 Green Ridge Street, Dunmore, Pennsylvania. (Doc. 8-2 at 4.)  As noted in the text, this differs from Plaintiff's August 25, 2015, recorded statement wherein he said he resided at 1071 Bunnell Farm Road, Union Dale, Pennsylvania.  (*See* Doc. 8 at 4.)

content of the police report was discussed.  (Compl. ¶¶ 25, 29
(Doc. 1 at 11-12).)  Regarding the UM claim, Plaintiff's only
relevant allegation is that Ms. Morris told Ms. Bowers that the
police report indicated the other driver was uninsured, an
assertion contrary to the information in the report indicating the
other vehicle was insured through CSAA General.  (Compl. ¶ 29 (Doc.
1 at 12); Doc. 8-2 at 3.)  Given the lack of factual support in the
record supporting Plaintiff's assertion of PIP and UM claims at the
early stage of the claims handling process, the fact that there is
no evidence that Plaintiff sought clarification regarding PIP and
UM coverage following the call where Ms. Bowers allegedly denied
all claims, and the fact that the Police Report states that no one
was injured and the other vehicle was insured (Doc. 8-2 at 2, 3,
5), the "clear and convincing evidence" that Defendants acted in
bad faith on the basis of Ms. Morris' conversation with Ms. Bowers
is lacking.  *See Treadway*, 467 F. App'x at 146-47.  Thus, I
conclude the record does not provide the evidentiary requirements
for establishing a bad faith claim during the initial period and
Plaintiff's statutory bad faith claim is properly dismissed.

**2.    Good Faith and Fair Dealing**

Defendants assert that Plaintiff's claim for a breach of the
covenant of good faith and fair dealing is inappropriate in this
action based on the Court's decision in *Cicon v. State Farm Mut.
Auto Ins. Co.*, Civ. A. No. 3:14-CV-2187, 2015 WL 926148 (M.D. Pa.

Mar. 4, 2015).  Defendants correctly point out that in *Cicon* this Court cited *D'Ambrosia v. Pennsylvania National Mutual Casualty Ins. Co.*, 431 A.2d 966 (Pa. 1981), in support of the proposition that "'[t]he Pennsylvania Supreme Court has held that there is no cause of action for a breach of the implied duty of good faith and fair dealing in a case for first party insurance benefits, like this one, where an insured is suing his insurer.'"  (Doc. 8 at 13 (quoting *Cicon*, 2015 WL 926148, at *2).)  *Cicon* also explained that the implied covenant of good faith and fair dealing does not give rise to an independent cause of action where a breach of contract claim has been lodged.  2015 WL 926148, at *3 (citing *Zaloga v. Provident Life and Accident Ins. Co. of America*, 671 F. Supp. 2d 623, 629 (M.D. Pa. 2009)).

Plaintiff points to *Zaloga* and other authority in support of his argument that this claim should not be dismissed.  (Doc. 12 at 21-22.)  In *Cicon*, the Court concluded *Zaloga* did not support the plaintiff's argument.  2015 WL 926148, at *3.  The authority relied upon here is precisely the authority Plaintiff's counsel relied upon in *Cicon* and *Monck v. Progressive Corp.*, Civ. A. No. 3:15-CV-250, 2015 WL 1638574 (April 13, 2015), which the Court rejected in both cases, 2015 WL 926148, at *3; 2015 WL 1638574, at *4.  Plaintiff makes no attempt to distinguish the case at bar from *Cicon* or *Monck*.  As we find no independent basis to reach a different conclusion here, no further discussion is warranted and

22

Plaintiff's claim for a breach of the covenant of good faith and fair dealing is properly dismissed because Plaintiff also asserts a breach of contract claim seeking PIP and UM benefits.

**3.** **Negligence**

Defendant's also argue that the Court's *Cicon* decision indicates Plaintiff's negligence claim is properly dismissed under the gist of the action doctrine because a review of the negligence claim shows there is no cause of action separate from the breach of contract claim. (Doc. 8 at 14 (citing *Cicon*, 2015 WL 926148, at *4; Compl. ¶¶ 69-73).)

Plaintiff acknowledges "[t]o be construed as a tort action, the wrong ascribed to the Defendant must be the 'gist of the action' with the contract being collateral." (Doc. 12 at 23 (citing *Bash v. Bell Telephone*, 601 A.2d 825 (Pa. Super. 1992)).) He also notes that "the important difference between contract and tort actions is that tort actions 'lie from the breach of duties imposed as a matter of social policy' while contract actions lie from the breach of duties imposed by mutual consensus." (Doc. 12 at 23-24 (quoting *Bash*, 601 A.2d 825).) Plaintiff highlights a 2014 Pennsylvania Supreme Court decision, *Bruno v. Erie Ins. Co.*, 106 A.3d 48 (Pa. 2014), which explains that "a negligent [sic] claim may be brought against a party for actions taken in performance of contractual duties, if those actions constitute a breach of a general duty of care created by law and owed to all the

public." (Doc. 12 at 24 (citing *Bruno*, 106 A.3d at 65).)
Plaintiff contends his negligence claim is not barred by the gist
of the action doctrine because Defendants' duties are not imposed
solely by the contract, specifically noting that "an insurer owes a
duty to its insured to use reasonable care and due care in
investigating and adjusting a loss." (Doc. 12 at 26 (citing *Damon
v. Penn Mutual Ins. Co.*, 372 A.2d 1218, 1226 (Pa. Super. 1997)).)

Plaintiff properly points to *Bruno* as the definitive
Pennsylvania case on the issue of whether a negligence action is
barred by the gist of the action doctrine when the alleged
negligence arose in the context of the performance of a contract.
In reviewing Pennsylvania cases on the subject, *Bruno* explained
that

> [i]f the facts of a particular claim
> establish that the duty breached is one
> created by the parties by the terms of their
> contract--i.e., a specific promise to do
> something that a party would not ordinarily
> have been obligated to do but for the
> existence of a contract--then the claim is to
> be viewed as one for breach of contract. . .
> . If however, the facts establish that the
> claim involves the defendant's violation of a
> broader social duty owed to all individuals,
> which is imposed by the law of torts and,
> hence, exists regardless of the contract,
> then it must be regarded as a tort.

*Bruno*, 106 A.3d at 68. The Court affirmed that the duty-based
demarcation recognized for over a century and a half in
Pennsylvania courts remained "the touchstone standard for
ascertaining the true gist or gravamen of a claim pled by a

24

plaintiff in a civil complaint." *Id.* at 69.

On its face, the duty identified by Plaintiff appears to be a duty relating to the performance of contractual duties rather than a general duty of care owed to all the public. *See Bruno*, 106 A.3d at 65. A closer reading of *Damon* confirms this categorization. In considering the quality of an investigation conducted by an insurance company following an insured's claimed loss, the Superior Court relied on an earlier decision where it stated

> [t]he law is clear that "in the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract. Accordingly, a promise to do an act necessary to carry out the contract must be implied." 8 P.L.E., Contracts, § 140.

*Damon*, 372 A.2d at 1226 (quoting *D.B. Van Campen Corp. v. Building and Construction Trades Council of Phila.*, 195 A.2d 134, 136-37 (Pa. Super. 1963)). Applying the principle to the facts of the case, *Damon* found that

> implied in the policy was a promise by appellee that it would exercise reasonable care in investigating a claim by appellants. . . . The insurer's promise to exercise reasonable care in investigating a claim is necessary to ensure that the insurer refrains from doing anything that would destroy or injure the insured's right to receive the fruits of the contract.

*Id.* (internal quotation omitted). *Damon* added that "[t]he duty of

25

good faith and due care in investigating the insured's claim thus implied in the contract is an express condition of the contract." *Id.* at 1227. *Damon* also noted that the Pennsylvania Supreme Court applied the same reasoning in a case involving a typical automobile insurance policy in *Gedeon v. State Farm Mut. Automobile Ins. Co.*, 188 A.2d 320, 322 (Pa. 1963). 372 A.2d at 1227. Thus, Plaintiff is mistaken in relying on *Damon* to establish a negligence action based on an insured's "duty to its insured to use reasonable care and due care in investigating and adjusting a loss." (Doc. 12 at 26 (citing *Damon*, 372 A.2d at 1226)): *Damon* clearly establishes that the duty is a provision of the contract itself.

A review of Plaintiff's negligence claim and the facts of this case shows that, pursuant to *Damon* and *Bruno*, the duty allegedly breached is one created by the parties by the terms of their contract--the claimed negligence is based on Defendants' "handling of Plaintiff's uninsured motorist claim," "denying coverage for Plaintiff's uninsured motorist claim and first party medical benefits," and "breach of the fiduciary duties owed to its insured." (Compl. ¶¶ 70-72 (Doc. 1 at 25).) Plaintiff's negligence claim does not point to a duty existing outside the contract, i.e., it is not a claim involving "a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract . . . [and] must be regarded as a tort." *Bruno*, 106 A.3d at 68. Accordingly,

26

Plaintiff's negligence claim is properly dismissed.

## 4.   **Vicarious Liability**

Defendants again point to *Cicon* to support the assertion that Plaintiff's claim for vicarious liability must be dismissed.  (Doc. 8 at 14.)  Plaintiff maintains that this claim should go forward because he has asserted causes of action against Defendants for negligence, bad faith, and breach of the duty of good faith and fair dealing, and these claims are based in part on the conduct of Defendants' "agents and/or employees including but not limited to Beverly Bowers and Shannon Potts."  (Doc. 12 at 29.)  Because the Court has determined that Plaintiff's claims for negligence, bad faith, and breach of the covenant of good faith and fair dealing are properly dismissed, the alleged bases for the vicarious liability claim are lacking.  Therefore, further discussion is not warranted and Plaintiff's claim for vicarious liability is also properly dismissed.

### III. Conclusion

For the reasons discussed above, Defendants' Motion to Dismiss (Doc. 7) is GRANTED and the following counts are dismissed from Plaintiff's Complaint: Count Three, Good Faith and Fair Dealing; Count Four, Bad Faith 42 Pa. C.S. § 8371; Count Five, Negligence; and Count Six, Vicarious Liability.  Given the facts alleged and the legal requirements of the claims dismissed, it appears that amendment would be futile.  However, in an abundance of caution,

27

the Court will allow Plaintiff an opportunity to amend his complaint as to these claims.

The following claims go forward: Count One, Uninsured Motorist Claim; Count Two, Breach of Contract; and Count Seven, Claim Pursuant to 75 Pa. C.S. § 1716.

An Order consistent with these determinations will be filed simultaneously with this Memorandum.


S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: June 10, 2016