```
                    UNITED STATES DISTRICT COURT
                 FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD MYERSKI,                   :
                                   :
          Plaintiff,               :CIVIL ACTION NO. 3:16-CV-488
                                   :
     v.                            :(JUDGE CONABOY)
                                   :
FIRST ACCEPTANCE INSURANCE         :
COMPANY, INC., and FIRST           :
ACCEPTANCE INSURANCE               :
SERVICES, INC.,                    :
                                   :
          Defendants.              :
                                   :
```
___

## **MEMORANDUM**

Plaintiff's Motion for Reconsideration of the June 13, 2016 Order (Doc. 32) is pending before the Court.  In his supporting brief, Plaintiff asserts that the Court erred in granting Defendants' Motion to Dismiss (Doc. 7) for four reasons: 1) the Court misapplied or applied the incorrect legal standard to Defendants' Rule 12(b)(6) motion; 2) the Court made factual determinations regarding disputed issues; 3) the Court erroneously adopted Defendants' statement of facts and construed them in the light most favorable to Defendants; and 4) the Court impermissibly relied on statements contained in the police report.  (Doc. 33 at 6-7.)  Defendants respond that there is no ground upon which the Court's decision to dismiss Plaintiff's bad faith claim need be reconsidered.  (Doc. 35 at 14.)  With the July 25, 2016, filing of Plaintiff's reply brief (Doc. 37) in which he further supports and clarifies the bases for relief previously asserted, this motion

became fully briefed and ripe for disposition.  For the reasons discussed below, I conclude Plaintiff has presented no basis for the Court to change its previous determination that Plaintiff's bad faith claim was properly dismissed.

## I. Background

A detailed background is set out in the Court's June 13, 2016, Memorandum.  (Doc. 28 at 1-7.)  Plaintiff sets out the following Statement of Facts in his supporting brief:

> Defendants issued a policy of insurance to Plaintiff's Mother Sara Morris, Policy Number 41 CSPA 43051 which was in effect from June 5, 2015 through December 5, 2015.  See Complaint, attached hereto as Exhibit A, at §23 and Exhibit A.  On or about, August 19, 2015 Plaintiff Richard Myerski was involved in an automobile accident, with an uninsured driver, while operating his mothers [sic] insured automobile.  *Id.* at §§6-19.  As a result of the subject accident, Plaintiff Richard Myerski sustained severe and permanent injuries.  *Id.*
>
> On the day of the accident, Ms. Morris put Defendant on notice of the accident and advised that her son, the Plaintiff, was injured.  *Id.* at §25.  Since that time Defendants have continuously denied coverage for all claims under the policy, including Plaintiff's UM and First Party Medical Benefits claims.  *Id.* At §§25-39.
>
> Due to Defendants denial of coverage, despite information from its insured that the denial was not supported by facts, Plaintiff was forced to retain counsel.  *Id.* at §30. In denying coverage, Defendants sent and resent the same denial letter which was originally sent to Plaintiff's Mother on August 25, 2015, denying Ms. Morris' property damage claim based on the household and/or

> frequent use of the vehicle exclusions, which are inapplicable under the policy to claims for UM and First Party Medical benefits. *Id.* at §§25-36 and Exhibits B, D, and F.
>
> Despite letters from Plaintiff's counsel which expressly stated that she represented Richard Myerski as a result of the injuries he sustained in a motor vehicle accident, Defendants continued to send the same property damage denial letter that was entirely irrelevant to the Plaintiff's Claims. *Id.* at §25-36 and Exhibits C and E. On December 2, 2015, Defendant agent Beverly Bower contacted Plaintiff's attorney's office and informed her that the Defendant was maintaining its denial of all claims based on the "household exclusion and the regular and frequent use of the vehicle." *Id.* at §36.
>
> Plaintiff filed a Complaint in the instant action on or about February 22, 2016 in the Court of Common Pleas of Lackawanna County asserting claims for UM Benefits, Breach of Contract, Good Faith and Fair Dealing, Bad Faith, Negligence, Vicarious Liability, and First Party Medical Benefits pursuant to 75 Pa. C.S.A. §1716. The case was then removed, by the Defendants, to the United States District Court for the Middle District of Pennsylvania on March 22, 2016. On March 25, 2016, Defendants filed a Motion to Dismiss Plaintiff's bad faith claim. On June 13, 2016, this Court Granted Defendants [sic] Motion. Plaintiff now seeks reconsideration of the Court's June 13, 2016.

(Doc. 33 at 4-5.)

In deciding the instant motion, the Court considers the foregoing recitation and the background information set out in the Court's June 13, 2016, Memorandum. (Doc. 28 at 1-7.)

## II. Discussion

*A. Legal Standard*

A motion for reconsideration filed pursuant to Rule 59(e) or

3

under the Local Rules of Court[1] may be granted on one of the following grounds: "1) an intervening change in the controlling law; 2) the availability of new evidence that was not available when the court [entered the order complained of]; or 3) the need to correct a clear error of law or fact or to prevent injustice." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 673 (3d Cir. 1999). Courts should grant Rule 59(e) motions "sparingly because of the interests of finality and conservation of scarce judicial resources." *Ruscavage v. Zuratt*, 831 F.Supp. 417, 418 (E.D. Pa. 1993).  Here Plaintiff's motion is based on the third ground for relief: the need to correct clear errors of law.  (Doc. 33 at 5-6.)

***B.   Plaintiff's Claimed Errors***

**1.   Rule 12(b)(6) Legal Standard**

Plaintiff first claims the Court misapplied the legal standard applicable to a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 33 at 7.)  The Court agrees with Plaintiff that plausibility is the key to surviving a motion to dismiss.  (*See* Doc. 28 at 7-10; Doc. 33 at 7-8.)  Specifically, Plaintiff alleges that the Court applied the "clear and convincing evidence" standard in deciding that his bad faith claim was subject

---

[1] A timely filed motion for reconsideration under a local rule is a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e).  *Schroeder v. McDonald*, 55 F.3d 454, 459 (9th Cir. 1995) (citing *Bestran Corp. v. Eagle Comtronics, Inc.*, 720 F.2d 1019 (9th Cir. 1983)).

4

to dismissal. (Doc. 33 at 8 (citing Doc. 28 at 18, 21).) Plaintiff is correct that the Court used the language cited. Unfortunately, the Court did so in a shorthand version of explaining its conclusion: the Court's conclusion was that it was not plausible from the allegations pled that Plaintiff could succeed on the bad faith claim where he would need to show by "clear and convincing evidence . . . that the insurer: (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (internal quotation omitted). (Plaintiff would need to show under the "clear and convincing" standard, "that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or nor the defendants acted in bad faith." *Id.)* The Court decided the bad faith claim in the context of the requirements of such a claim under Pennsylvania law and applying common sense to the circumstances presented in the documents acceptably considered on a Rule 12(b)(6) motion. *See, e.g., Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009); *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). The facts presented in the Complaint did "not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 566 U.S. 662, 679 (2009). Keeping in mind that "[w]here a

complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief," 556 U.S. at 678, the Court determined that the thread-bare allegations in the complaint did not meet the requisite standard.  With the clarification of the standard employed set out here, the Court finds no reason to reconsider its conclusion.[2]

2.  **Factual Determinations**

Plaintiff maintains that the "Court impermissibly made factual determinations regarding disputed issues of fact and erroneously adopted the Defendants [sic] statement of facts and constru[ed] these facts in the light most favorable to the Defendants, the moving party."[3]  (Doc. 33 at 9.)  Plaintiff first specifically

---

[2]  Plaintiff's criticism of the Court's discussion of bad faith related to the property damage claim is acknowledged.  (*See* Doc. 33 at 17, & n.5.)  Because Plaintiff's Complaint and supporting brief discuss the dispute regarding Plaintiff's residence at the time of the accident (*see*, *e.g.*, Doc. 1 ¶¶ 28, 29; Doc. 12 at 10), the Court, in an abundance of caution, addressed that possible aspect of the bad faith claim.  The Court made no determinations regarding Plaintiff's actual residence at the time of the accident or his frequency of use of the vehicle--both matters relevant to the property damage claim.

[3] Plaintiff does not elaborate on his statement that the Court erroneously adopted Defendants' statement of facts.  Plaintiff does not identify any facts set out in that statement which were inconsistent with facts set out in Plaintiff's Complaint or other documents appropriately considered.  (*See* Doc. 33.)  In its Memorandum on the Motion to Dismiss (Doc. 28), the Court noted that it adopted Defendants' statement because Plaintiff provided no citations to the record in his asserted factual background.  (Doc. 28 at 1 n.1.)  Furthermore, the Court's "Background" section included statements found in Plaintiff's factual background which

6

asserts that the Court impermissibly viewed the facts in the light most favorable to Defendants by concluding that Defendants may not have known that a claim for PIP and UM benefits was being asserted. (*Id.* (citing Doc. 28 at 20).)

In the citation to the Court's Memorandum identified by Plaintiff, the Court looked at the allegations in Plaintiff's Complaint regarding the first call Ms. Morris made to Defendants and concluded she had not clearly made a PIP claim and Plaintiff made no assertion that Plaintiff's injuries were mentioned subsequently.  (Doc. 28 at 20.)  This is not viewing the facts in the light most favorable to Defendant--it is an assessment of assertions contained in the Complaint where the allegations establish that Ms. Morris only once, on the day of the accident, mentioned that her son had been injured.  (Doc. 28 at 20-21; Doc. 1 ¶ 18.)  The conclusion that mere mention of an injury, without more, does not support a claim for bad faith on the part of the Defendants for not opening a PIP claim upon the assertion of that bare fact alone given that bad faith requires "clear and convincing evidence . . . that the insurer: (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of a reasonable basis in denying

---

were not contained in Defendants' statement of facts.  (*See* Doc. 28 at 6-7.)  Therefore, Plaintiff has not shown, nor does the Court find, any error in the recitation of facts which, for citation purposes, were not taken directly from Plaintiff's supporting brief.

the claim," 393 F.3d at 367, is not viewing the facts in the light most favorable to Defendant, it is assessing a claim for relief in the proper context.  (Doc. 28 at 20.)  There was no resolution of a factual dispute: Plaintiff said Ms. Morris told Ms. Bowers that Plaintiff was injured in the accident on the day the accident occurred, a factual assertion which the Court accepted as true, Plaintiff does not assert that Ms. Morris again mentioned Plaintiff's injuries to Defendants, and Defendants do not contest these facts.

Plaintiff's criticism of the Court's conclusion regarding the UM claim is similarly unavailing.  (Doc. 33 at 12.)  Plaintiff's motion for reconsideration does not undermine the conclusion that Plaintiff has not *shown* that a claim for bad faith is anything more than possible on the basis of one phone call where he alleges that Ms. Morris, based on the police report she had received, provided information to Defendants regarding the insurance status of the other vehicle involved in the accident (Doc. 1 ¶ 29)--information that in fact was an inaccurate reflection of the contents of the police report.[4]  Accepting as true that Ms. Morris told Ms. Bowers that "the other vehicle was uninsured according to the police report" (*id.*), it is also true that the record before the Court contained the police report which indicated that the other vehicle

---

[4] For purposes of the bad faith analysis, the Court was not concerned with, nor did the Court decide, whether it was ultimately shown that the other vehicle was in fact insured.

8

was insured, (*see* Doc. 8-2 at 3 (Def.'s Ex. B, Police Rpt., 2 (other vehicle had insurance coverage through CSAA General))). Plaintiff has not contested the discrepancy between what the report indicated and what Ms. Morris told Ms. Bowers it indicated.  The Court did not reference the police report for its accuracy but rather for the discrepancy between the report itself and Ms. Morris's reliance upon it in her conversation with Ms. Bowers; though Ms. Morris may have been factually correct in her assertion that the other vehicle was uninsured, her attribution of the police report as the source of the information was factually inaccurate. The Court did not decide the bad faith issue based on what Defendants may have known at the time of the phone call from Ms. Morris, the Court concluded that, in the factual scenario presented, Plaintiff did not show it was plausible that Defendants "(1) did not have a reasonable basis for denying (UM) benefits under the policy; and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim"--elements he would need to show by clear and convincing evidence to ultimately succeed on his claim. *J.C. Penney Life Ins. Co.*, 393 F.3d at 367.

   Whether the facts constitute or give rise to an inference of legal notice of a PIP and UM claims is another question, one which Plaintiff raises for the first time in his motion for reconsideration with his argument related to the Unfair Claims Settlement Practices Act ("UCSPA").  (*See* Doc. 32 ¶¶ 31-34; Doc. 33

at 10-11.) Relevant guidance instructs that the District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Iqbal*, 556 U.S. at 678. To the extent Plaintiff is arguing that Ms. Morris's one mention that her son was injured in the accident and single assertion that the other vehicle was not insured satisfy notice of PIP and UM claims under the USPCA, the Court need not accept the assertions as true. *Id.* The Court assessed facts as facts, not as legal conclusions. Whether the statement that the insured's son was injured in an accident made on the day of the accident without detail or followup was sufficient to constitute UCSPA notice is not at issue--whether *bad faith* could be found in the Defendants' failure to open a PIP claim on the basis of Ms. Morris's sole, undetailed assertion of injury was the question addressed in the cited language and the Court determined Plaintiff had not presented facts which made such a claim more than possible. Again, this is a context specific conclusion, the context including the consideration that a bad faith claim requires more than negligence or bad judgment, *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. 2004). Even assuming *arguendo* there was no reasonable basis to deny a PIP claim *in the abstract*, there is no factual assertion in the Complaint which gives rise to the inference that Defendants "knew or recklessly disregarded the lack of a reasonable basis in denying the claim," *J.C. Penney Life Ins. Co.*, 393 F.3d at 367, because all

10

Defendants had to go on before counsel got involved was Ms. Morris's statement of injury (with absolutely no elaboration alleged) on the day of the accident.  Plaintiff's claim regarding UM benefits is similarly deficient.  Thus, while the Court's shorthand language was unfortunate, the conclusion was appropriate.

Plaintiff also alleges error in the Court's conclusion that he had not presented sufficient evidence to show bad faith in the time period beginning in late November 2015 when Plaintiff's counsel began communicating with Defendants.  (Doc. 33 at 12-15.)  The clarification regarding the shorthand referencing "clear and convincing evidence" needed to show a claim for bad faith and establishing that this referenced Plaintiff's ultimate burden of satisfying the standard regarding the elements of the bad faith claim (showing Defendants did not have a reasonable basis for denying benefits under the policy *and* knew or recklessly disregarded its lack of a reasonable basis in denying the claim), applies to the Court's determination that bad faith had not been plausibly shown for this time period.  (Doc. 28 at 16-18.)  With this clarification, the Court concludes Plaintiff has not shown that the Court's conclusion was error for the reasons discussed in the June 13, 2016, Memorandum.  (*Id.*)

Plaintiff's assertions that decisions made by the Court were improper in light of the limited discovery conducted (Doc. 33 at 6, 15) are unavailing in that the Court's determinations were based on

11

the paucity of information Ms. Morris had provided to Defendants and the timeline of events provided by Plaintiff.  There was just too little communicated to Defendants on too few occasions by the insured in the early stage of the claims process to support a bad faith claim (Doc. 28 at 18-21), and the same is true for the later period based on the appropriate response of Defendants' claims supervisor within four business days of the initial correspondence from Plaintiff's attorney (*id.* at 16-18).  Considering the facts asserted by Plaintiff in conjunction with other evidence properly considered, the Court concluded that Plaintiff had not shown that her bad faith claim was plausible.  If Ms. Morris provided information to Defendants or communicated with Defendants beyond what was factually averred in the Complaint and motion briefing, such information was within Plaintiff's control without discovery.

### 3.  **Police Report**

Plaintiff specifically argues that the Court impermissibly relied on statements contained in the police report which are contradicted by the averments contained in Plaintiff's Complaint and evidence already discovered in this matter.  (Doc. 33 at 15.) As discussed above, the Court did not rely on statements contained in the police report for the accuracy of the assertions but rather for the discrepancy between what Ms. Morris said it said and what it actually said.  While Plaintiff may be correct in some sense that his "claims in this matter are not based on the police

12

report," he alleges notice to Defendants of a UM claim based on the information contained in the report (Doc. 1 ¶ 29) and the Court correctly noted that the information conveyed to Ms. Bowers was inaccurate as discussed in the previous section of this Memorandum. The Court's consideration of this report was acceptable as a document attached to Defendants' motion whose authenticity was not questioned, as a matter of public record, or as a document whose contents are alleged in the complaint whose authenticity was not questioned.  *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).  Plaintiff does not allege that the police report attached to Defendants' brief had been altered or was otherwise a different document than the police report Ms. Morris had relied upon.  Therefore, Plaintiff has not shown it was error for the Court to reference the report in its discussion of Plaintiff's bad faith allegations.  Further, in the context of a single phone call regarding the other vehicle's status and Ms. Morris's misplaced reliance being the only attributed source of the claimed UM status prior to the involvement of counsel, the Court correctly concluded that Plaintiff had not shown the plausibility of bad faith allegedly based on the assertion of a UM claim to Ms. Bowers in the first instance.

## III. Conclusion

For the reasons discussed above, with the Court's clarification of the standard employed in the Court's June 13, 2016, Memorandum, Plaintiff has not shown that the Court erred in its determination that Plaintiff's claim for bad faith was properly dismissed.  Therefore, Plaintiff's Motion for Reconsideration of the June 13, 2016 Order (Doc. 32) is DENIED.  An appropriate Order will be filed simultaneously with this Memorandum.

                S/Richard P. Conaboy
                RICHARD P. CONABOY
                United States District Judge

DATED: August 3, 2016